

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PATRICK BROWN | CIVIL ACTION NO. 04-0904-A |
| -vs- | JUDGE DRELL |
| LEROY HOLIDAY, et al. | MAGISTRATE JUDGE KIRK |

## REASONS FOR JUDGMENT

Plaintiff, Patrick Brown, filed this suit seeking compensation for damages he allegedly sustained as a result of what he contends was an excessive use of force and a failure to provide him with adequate medical care when he was incarcerated at River Correctional Center in Ferriday, Louisiana on March 10, 2004. After pretrial motions and other dispositions, the only remaining defendants are Barrett Book and Randall Eubanks.[1] The matter has been tried before this Court, and all appropriate post-trial submissions have been made. In the course of this litigation, and because of Plaintiff's relative disadvantage, the Court solicitously granted multiple extensions, continuances, and case reinstatements to allow Plaintiff a full and complete opportunity to obtain competent counsel and present his case. All of that led to only a three-witness trial. Given this, we are convinced all of the testimony which could have been presented has been. Thus, this matter is over-ripe for decision. Considering the evidence and

---

[1] Lt. Michael Lloyd was never served, and the suit against him was dismissed for failure to prosecute on March 26, 2008. (Document No. 84.)

argument of counsel, and for the reasons set forth below, Plaintiff's claims will be dismissed with prejudice.

## I. ISSUES AND FINDINGS OF FACT

The parties' versions of the facts in this case are almost completely at odds.

Patrick Brown testified that beginning in January 2004, he was detained at River Correctional Center in Concordia Parish, Louisiana, while he awaited deportation to Jamaica.[2] Because Mr. Brown, a Rastafarian, refused to cut his hair, he was housed in a segregation or "lockdown" cell. On March 10, 2004, Mr. Brown was in his cell smoking a cigarette he had purchased at the prison commissary.[3] Without warning, Defendant, Randall Eubanks, unlocked Mr. Brown's cell door and entered. At that point, Lt. Michael Lloyd came into the cell, slapped Mr. Brown, and told him to put the cigarette out. Four other guards entered the cell and started hitting, kicking, and stomping on Plaintiff. At Lt. Lloyd's direction, Plaintiff was dragged into the hallway, where he was kicked, beaten, and handcuffed. Defendant, Barrett Book, then sprayed Plaintiff with pepper spray. Mr. Brown was finally returned to his cell and left there for twenty minutes with no medical attention.

Plaintiff further explained that after he was placed back in his cell, he asked twice for medical care. However, it was his understanding he was not given any such treatment, because Lt. Lloyd had reported Mr. Brown refused medical assistance.

---

[2] Mr. Brown, who is forbidden to re-enter the United States, testified by way of a video conference link from Jamaica.

[3] It was Mr. Brown's understanding that he was allowed to smoke in his cell. Indeed, one of the officers on duty lit Plaintiff's cigarette for him on the day of the incident.

2

Plaintiff filed a grievance and was taken to the warden's office five days later, at which time the warden ordered Mr. Brown be given a medical evaluation. When he was seen by the doctor, Plaintiff was treated with two injections and some tablets for pain. Mr. Brown, who was walking with a cane at the time of his trial, testified he did not need a cane prior to March 10, 2004, and he had never previously complained of back or neck pain. Indeed, he was active in sports and considered himself to be a healthy person prior to the incident. After that date, however, he experienced irritation and itching to his eyes, difficulty walking secondary to low back pain, and pain in his neck, foot, and side, all of which he sometimes treated with over-the-counter pain medication. Mr. Brown said that if he lived closer to a city, he might be able to work as a grocery bagger, but that he was not working at the time of the trial, because he was unable to stand for extended periods of time.

Under cross-examination, Plaintiff admitted he had been convicted of possession of stolen property within the past ten years. He also acknowledged receiving medical care from the doctor and/or nurse at River Correctional Center on March 15, 2004 and on subsequent occasions. Additionally, he explained he was transferred from River Correctional Center to another facility on April 2, 2004,[4] and that his only lingering physical complaint was back pain, which hindered his ability to walk.

Defendant, Randall Eubanks, who received certification through the Peace Officer Standards and Training ("POST") program, testified that on March 10, 2004, he was employed as a corrections officer for the Concordia Parish Sheriff's Department. While

---

[4] While he was detained in Oakdale, Louisiana, Mr. Brown contends he saw the doctor often and was given pain medication daily.

he and Lt. Lloyd were walking down one of the hallways at the River Correctional Center, Mr. Eubanks smelled cigarette smoke coming from Patrick Brown's cell. Because the facility had a policy against smoking in the lockdown cells, Mr. Eubanks told Mr. Brown several times to put the cigarette out. Lt. Lloyd also instructed Plaintiff to extinguish the cigarette. In response, Mr. Brown said "if we wanted him to put it out, we could come in there and put it out for him."[5] At that point, Lt. Lloyd instructed Mr. Eubanks to open the cell door. Lt. Lloyd tried to get the cigarette away from Mr. Brown, but Plaintiff started fighting with Lt. Lloyd and began to leave the cell. Therefore, Mr. Eubanks grabbed Mr. Brown and attempted to restrain him. Plaintiff was able to maneuver past Mr. Eubanks and run into the hallway, where other officers took him down. Mr. Brown continued to fight, so Lt. Lloyd removed Mr. Book's chemical agent and sprayed it in Plaintiff's face.[6] Mr. Eubanks specifically stated he did not punch or kick Mr. Brown, and he did not witness any other officer doing so.

Under cross-examination, Mr. Eubanks admitted that after he completed his report regarding the incident, he refused to re-write the document to conform to Lt. Lloyd's wishes. However, he did not remember which part of the report Lt. Lloyd wanted him to change. Mr. Eubanks also said he and Lt. Lloyd did not have a particularly good relationship.

---

[5] Trial Transcript, p. 58.

[6] During Mr. Eubanks's deposition, he testified he did not see the entire incident, because some of it occurred beyond a set of doors. At the trial, however, he said Plaintiff had been subdued before he passed through the doors.

4

Defendant, Barrett Book, testified he was a "POST" certified corrections officer in 2004 when he was working at River Correctional Center. While he had no independent recollection of the incident at issue, Mr. Book stated that he never punched or kicked Mr. Brown, and he did not deploy his chemical agent against Mr. Brown.

Mr. Book did sign an "Unusual Occurrence Report" dated March 10, 2004 and another statement dated July 22, 2005.[7] The March 10th report states Mr. Book saw Mr. Brown become agitated when told he could not smoke in his lockdown cell. Mr. Brown then made an aggressive movement toward Lt. Lloyd. Mr. Book attempted to restrain Plaintiff but was not successful. Mr. Book instructed Mr. Brown to get on the floor, but Plaintiff did not comply. Lt. Lloyd then removed the chemical agent from Mr. Book's holster and deployed it against Mr. Brown. Thereafter, Mr. Book and another officer were able to take Plaintiff down and restrain him. Mr. Brown was then returned to his cell and offered a shower and medical assistance, both of which Plaintiff refused. The July 22, 2005 statement is similar, but it appears to vary on the detail of whether Mr. Brown was standing or on the floor when Lt. Lloyd deployed the chemical agent. The statement also explains that Lt. Lloyd resigned his post approximately five days after the March 10, 2004 incident, but no reason is given for the resignation.

## II. APPLICABLE LAW

In order to prevail in a civil rights action under 42 U.S.C. §1983, the plaintiff must prove by a preponderance of the evidence that the conduct of the defendants was under the color of state law and resulted in a deprivation of rights, privileges, and immunities

---

[7] Exhibit 4.

secured by the United States Constitution, or a federal statute, or both.[8] There is no dispute that both the defendants were acting under color of state law as corrections officers at all relevant times.

## A. The Excessive Force Claim

Plaintiff contends he was subjected to excessive force in violation of the Eighth Amendment. However, the record does not show his imprisonment resulted from a criminal conviction. Rather, Mr. Brown was being detained while awaiting deportation on an immigration violation. This places him in a capacity equivalent to that of a pretrial detainee,[9] such that his constitutional claims are more properly considered under the due process clause of the Fourteenth Amendment.[10] In the Fifth Circuit,

> [W]hen a court is called upon to examine the amount of force used on . . . pretrial detainees for the purpose of institutional security, the appropriate analysis is . . . "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."[11]

As the Supreme Court explained in Hudson, this standard contemplates a subjective examination of the defendant's state of mind as well as an objective analysis of the force applied in light of the correctional officer's responsibilities to maintain order and discipline.

---

[8] Bauer v. Texas, 341 F.3d 352, 357 (5th Cir. 2003).

[9] See Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000).

[10] Valencia v. Wiggins, 981 F.2d 1440, 1445 (5th Cir. 1993).

[11] Id. at 1446, quoting Hudson v. McMillian, 503 U.S. 1 (1992).

Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." [12]

In the instant case, Mr. Brown presented no evidence of either Defendant's state of mind. Instead, Plaintiff simply rested after reciting his own self-serving testimony.

As to objective factors suggesting intent, the jurisprudence outlines the following as some that may be examined by the trier of fact:

(1) [t]he extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response.[13]

Even if we were to accept all of Mr. Brown's testimony regarding Mr. Eubanks, the only evidence is that Mr. Eubanks opened the cell door and came in.[14] Plaintiff failed to meet his burden of proof that Mr. Eubanks even touched Mr. Brown, let alone employed any type of excessive force.

---

[12] Hudson, 503 U.S., at 6, quoting Whitley v. Albers, 475 U.S. 312, 321-322 (1986).

[13] Valencia, 981 F.2d at 1446-1447, n. 29.

[14] Although Plaintiff's counsel argues the evidence showed Mr. Eubanks "kicked" and "stomped" Mr. Brown, this Court interprets the testimony differently. The relevant exchange is as follows: "A. Yes. Yes, ma'am. And that was when Officer Eubanks was along with him. Then four others, you know, just kicking me for no reason. . . . Q. So Officer Eubanks was in your cell at that time, too? A. Yes, ma'am. Q. And then four other guards came? A. Yes, ma'am. Q. And then they started to hit you? A. They just started kicking me, stomping me." (Trial Transcript, p. 20.) This testimony does not establish that Mr. Eubanks kicked or stomped Plaintiff.

Plaintiff's only evidence concerning Mr. Book is that "Officer Book was the one that maced me."[15] This statement was controverted by the testimony of Mr. Eubanks and Mr. Book as well as by the written report Mr. Book completed immediately after the incident, all of which establish that Lt. Lloyd deployed the chemical agent he had removed from Mr. Book's holster. Under these circumstances, the Court finds Plaintiff has also failed to meet his burden of proof that it was Mr. Book who sprayed the chemical agent. The record being devoid of other proof Mr. Book had any physical contact with Mr. Brown, the Court cannot find Mr. Book utilized excessive force in this case.

We are left, therefore, with Plaintiff's argument that Defendants are liable under § 1983 because they failed to prevent others from infringing upon Mr. Brown's constitutional rights. It is true that Fifth Circuit jurisprudence has held law enforcement officers are obligated, in certain circumstances, to prevent fellow officers from violating a person's constitutional rights.[16] Essential to such an obligation, however, is proof the defendants observed an underlying constitutional deprivation.[17] In the instant case, Plaintiff has not met his burden of proof on this point. No corroborating evidence to support the alleged "kicking" and "stomping" was presented. There is proof that someone deployed Mr. Books's chemical agent, but there was no showing this amount of force was unreasonable in light of the credible evidence that plaintiff failed to respond

---

[15] Trial Transcript, p. 22.

[16] See Ware v. Reed, 709 F.2d 345, 353 (5th Cir. 1983).

[17] See Lewis v. Goodie, 798 F. Supp. 382, 390 (W.D. La. 1992).

8

to verbal commands, acted aggressively, and attempted to avoid being restrained. Under these circumstances, Mr. Book or Mr. Eubanks cannot be held liable for failure to intervene.

**B. Medical Care**

The jurisprudence recognizes "no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care."[18] "When the alleged unconstitutional conduct involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights . . . ."[19]

> To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. . . . Deliberate indifference is more than mere negligence in failing to supply medical treatment.[20]

In this case, Plaintiff presented no evidence that either Mr. Eubanks or Mr. Book had anything to do with any medical decisions following the incident. Mr. Brown testified Officer Thames told Plaintiff that using water to flush his eyes would make it worse, Lt. Lloyd told Plaintiff to get dressed to go see the doctor or nurse, and Plaintiff asked an individual named Officer Bell if he was going to be taken for medical attention. Therefore, Mr. Brown has failed to meet his burden of proof that Mr. Eubanks or Mr. Book acted with deliberate indifference regarding his medical needs.

---

[18] Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001).

[19] Id.

[20] Id. at 549, citing Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) and Williams v. Treen, 671 F.2d 892, 901 (5th Cir. 1982).

## III. CONCLUSION

For the foregoing reasons, this Court will render judgment against Plaintiff and in favor of Defendants, and Plaintiff's claims will be DISMISSED WITH PREJUDICE.

SIGNED on this 14 day of April, 2009 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE